### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

WILLIAM R. TINNERMAN,

                Plaintiff,

v.                                     Case No. 3:09-cv-652-J-34JBT

UNITED STATES,

                Defendant.

_____/

## O R D E R

**THIS CAUSE** is before the Court on Plaintiff William R. Tinnerman's Amended Complaint (Doc. No. 25; Amended Complaint), Defendant's Motion to Dismiss Amended Complaint (Doc. No. 30; Motion), and Plaintiff's Response to Defendant's Motion to Dismiss Amended Complaint and Memorandum of Law (Doc. No. 33; Response).

### I. Procedural Background

Tinnerman initiated this litigation on June 11, 2009, by filing a complaint in the Seventh Judicial Circuit, in and for St. Johns County, Florida. See Notice of Removal (Doc. No. 1; Notice of Removal).[1]  On July 15, 2009, Defendant, the United States, removed the action to this Court pursuant to 28 U.S.C. § 1444. See id. In the original complaint (Doc. No.

_____

[1]This action represents the latest chapter in Tinnerman's ongoing battle with the IRS over his tax obligations. See Tinnerman v. IRS, No. 3:04-cv-1082-J-99MMH, 2005 WL 1332314 (M.D. Fla. May 10, 2005) (aff'd) 56 F. App'x 111 (11th Cir. 2005); Tinnerman v. Comm'r, T.C. Memo. 2006-250, 2006 WL 3299074 (U.S. Tax Ct. Nov. 14, 2006); Tinnerman v. Comm'r, T.C. Memo. 2010-150, 2010 WL 2766784 (U.S. Tax Ct. July 13, 2010).

2; Complaint), Tinnerman claimed fee simple ownership of the issued and outstanding shares of stock of St. Augustine Self-Storage, Inc., a Florida corporation (the "Shares"). See Complaint at 1-2.  Tinnerman also alleged that Defendant had asserted a lien in its favor against his property, including the Shares, for unpaid federal taxes and additional penalties, interest, and costs. Id. at 2-3.  Tinnerman appeared to contest the validity and effectiveness of the lien claimed by Defendant and sought to quiet title to the Shares pursuant to 28 U.S.C. § 2410(a)(1). Id. at 1-4.  As relief, Tinnerman requested a judgment invalidating Defendant's claims to the Shares; declaring that Defendant had no right, title or interest in the Shares; and granting other appropriate relief.  See id. at 4-5.

On August 10, 2009, Defendant filed Defendant's Motion to Dismiss (Doc. No. 13; First Motion to Dismiss).  In support of its request for dismissal of Tinnerman's Complaint, Defendant argued that this Court lacked subject matter jurisdiction over Tinnerman's challenge to the assessment of federal tax.  See First Motion to Dismiss at 2.  Defendant also argued that Tinnerman's Complaint failed to "state a claim for procedural irregularities in the lien." Id. at 3.  Accordingly, Defendant requested that the Court dismiss Tinnerman's action with prejudice.  Id. at 4.  Tinnerman timely filed a response to the First Motion to Dismiss.  See Doc. No. 15.

On February 4, 2010, this Court entered an order (Doc. No. 23; Order) resolving the First Motion to Dismiss.  In the Order, the Court granted the First Motion to Dismiss to the extent that the Complaint was dismissed without prejudice.  Order at 8.  In doing so, the Court read Eleventh Circuit precedent potentially to permit "allegations of procedural deficiencies in the assessment process without challenging the actual merits of the

-2-

underlying assessment." Id. at 6.  However, as the factual basis of Tinnerman's challenge was unclear, the Court permitted Tinnerman to file an amended complaint by March 19, 2010, in accordance with the terms of the Order.  Id.  In all other respects, the Court denied the First Motion to Dismiss.  Id.

In accordance with the Order, Tinnerman filed the Amended Complaint on March 18, 2010.  Subsequently, Defendant filed the Motion in which it seeks dismissal of Tinnerman's Amended Complaint pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure (Rule(s)), for lack of subject matter jurisdiction, and Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  Tinnerman has responded to the Motion, and it is now ripe for the Court's consideration.  Because the Motion seeks dismissal of Tinnerman's Amended Complaint on alternative grounds, the Court will briefly address the standard of review applicable to each.

## II.  Standards of Review

Rule 12(b)(1) provides for the dismissal of a case when the court determines it lacks subject matter jurisdiction over the action.  "Because a court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously ensure that jurisdiction exists over a case."  Smith v. GTE Corp., 236 F.3d 1292, 1299 (11th Cir. 2002).  A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be founded on either a "facial" or "factual" challenge to the court's jurisdiction:

> Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion.  Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings.  In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits.

-3-

Morrison v. Amway, Corp., 323 F.3d 920, 924 (11th Cir. 2003) (citing Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990)) (internal citations omitted).  In the matter before the Court, Defendant mounts a facial attack to the existence of subject matter jurisdiction. Thus, the Court will consider the allegations of the Amended Complaint, and if it determines that it lacks subject matter jurisdiction, the Amended Complaint will be dismissed as the Court "will be powerless to continue." Univ. of S.Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999).

In ruling on a motion to dismiss for failure to state a claim, the Court is governed by Rule 12(b)(6).  As with a facial attack to a court's subject matter jurisdiction, in determining whether a complaint states a claim, the Court must accept the factual allegations set forth in the complaint as true.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009);  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).  In addition, all reasonable inferences should be drawn in favor of the plaintiff.  See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam).    Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted).  Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).  The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted).  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." See Iqbal, 129 S. Ct. at 1949, 1951.  Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 1949 (quoting Twombly, 550 U.S. at 570).

### III. Discussion

In the Amended Complaint, Tinnerman again claims fee simple ownership of the Shares.[2]  Amended Complaint at 2.  Tinnerman asserts that as a result of his alleged failure to pay taxes due and owing to Defendant,"Defendant [has claimed], pursuant to 26 U.S.C. §§ 6321, 6322, and 6323 (2009), a lien on all property that is owned by Plaintiff or in which Plaintiff has an interest, including . . . the Shares." Id. at 4.  According to Tinnerman, the Notice of Lien ("Notice") asserts that Defendant made unsuccessful demands on Tinnerman

---

[2]Tinnerman acknowledges that he has pledged the Shares as collateral for a promissory note. Amended Complaint at 3-4.  Nevertheless, Tinnerman contends that, "[w]ith the exception of this one encumbrance on the title to the Shares, [his] ownership of the Shares is, and should be, free and clear of all encumbrances." Id. at 4.

for payment of taxes, and also "declares that a lien in favor of Defendant exists on all property, and rights to property, that is owned by Plaintiff 'for the amount of these taxes, and additional penalties, interest, and costs.'" Id. at 4-5. See also Notice (Doc. No. 26-1 at 1).[3] Tinnerman seeks to quiet title to the Shares pursuant to 28 U.S.C. § 2410(a)(1). Amended Complaint at 2. In doing so, he claims that "[n]either the existence nor the extent of any tax liability that Plaintiff may owe to Defendant is at issue in this case." Id. Nevertheless, Tinnerman contends that the "[l]ien is invalid and ineffective because Defendant's process of assessing the taxes, the alleged failure of which to pay Defendant contends gave rise to the Lien, was invalid and ineffective." Id. at 5 (emphasis supplied).

In support of his argument that the tax assessment process was flawed, Tinnerman questions the authority of the Internal Revenue Service (IRS) agents who prepared the substitutes for returns ("SFR") for the tax periods at issue, stating:

> Each of the SFRs prepared by Ms. Mosca [a/k/a Ms. Lynda Morgan] or Ms. Emery was invalid because neither of these agents had binding regulatory authority to issue the SFRs. Neither these agents nor the SB/SE Division had been given instructions by the Secretary or by the Commissioner with regard to whether Plaintiff was required to file a return with respect to any of the 'Adjustments to Income' that were included in any of the Prepared Delinquent Returns. Therefore, the SFRs prepared by Defendant were invalid.

---

[3]Due to a technological error, the Notice was not attached to the Amended Complaint despite Plaintiff's attempt to file them simultaneously. However, as the Clerk initially acknowledged receipt of both the Amended Complaint and attached Exhibits, including the Notice, see Plaintiff's Notice of Filing Exhibits to Amended Complaint (Doc. No. 26; Notice of Filing), for purposes of this Motion the Court considers the exhibits attached to Plaintiff's Notice as if they had been attached to the Amended Complaint when originally filed. Accordingly, the Court is free to consider the documents attached to the Notice of Filing in its resolution of the Motion. See Fed. R. Civ. P. 10(c); see also Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) ("When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.") (internal quotation omitted).

Id. at 5-6.  Tinnerman further contends that the "'IRC § 6020(b) Certification' (IRS Form 13496) that comprises the first page of the SFR for each of 1999, 2000, and 2001 is, on its face, invalid because the date of the certification is earlier than the date of the Prepared Delinquent Return that it certifies and that comprises the balance of the SFR." Id. at 7. Tinnerman also asserts that the Defendant improperly coded line items in the "Certificate of Official Record identified as Literal Transcript of Account." Id.  Due to the alleged procedural flaws in the SFRs, Tinnerman asserts that the Notices of Lien were invalid and "so too was the statutory Notice of Deficiency that was issued by the IRS on July 9, 2004, for Tax Periods Ending 1999, 2000, and 2001, and the statutory Notice of Deficiency that was issued by the IRS on January 7, 2005, for Tax Period Ending 2002." Id. at 8, ¶ 26.  Tinnerman acknowledges that he filed a petition in the United States Tax Court challenging the notices but asserts that the Court's November 21, 2006 decision was invalid because the Tax Court had no authority to address the invalid Notices of Deficiency. See id. at 8, ¶ 27. As a result, he contends "in the absence of any valid assessments, all efforts by Defendant to collect any such taxes or other amounts . . . are unauthorized and of no force or effect as a matter of law. See id. at 9, ¶ 29.

In the Motion, Defendant argues that this Court "lacks subject matter jurisdiction over the claim that IRS assessment procedures were invalid."  Motion at 4.  Defendant acknowledges that 28 U.S.C. § 2410 provides that the "United States may be named a party in any civil action or suit in any district court . . . to quiet title to real or personal property on which the United States has or claims a mortgage or other lien." Id. at 4-5 (citing 28 U.S.C. § 2410(a)(1)).  However, it asserts that Tinnerman's claims regarding the assessment

process lie outside of the waiver of sovereign immunity for quiet title actions established by 28 U.S.C. § 2410, thereby precluding this Court from exercising subject matter jurisdiction over those claims. See id. at 4-9. In doing so, Defendant asks the Court to reconsider its statement in the Order that a district court may consider a challenge to a tax lien based upon procedural deficiencies in the assessment process. See id. at 4-7. Additionally, Defendant argues that even if Tinnerman's claims are permissible, his "challenge to the merits of the assessments" is barred by the doctrine of res judicata because "Tinnerman previously challenged the validity of his 1999, 2000, 2001, and 2002 tax assessments before the Tax Court." See id. at 9-12 (citing Tinnerman v. Comm'r, T.C. Memo. 2006-250, 2006 WL 3299074 (2006) (holding 1999-2002 assessments valid and imposing a $10,000.00 penalty on Tinnerman for raising frivolous arguments)). Finally, Defendant contends that Tinnerman's "allegation that the [Notice] is procedurally invalid fails to state a claim upon which relief may be granted." See id. at 12-15.

In response to the Motion, Tinnerman argues that the Court correctly interpreted the Eleventh Circuit Court of Appeals decision in Stoecklin v. United States, 943 F.2d 42 (11th Cir. 1991) to permit a taxpayer to bring an action in federal court challenging procedural irregularities in the tax assessment process. See Response at 6-14. Thus, he contends that the Court should not reconsider its prior ruling, but that even if it does, the Court should still reach the same conclusion. Indeed, Tinnerman argues that his challenge to the assessment process in this action falls within the waiver of sovereign immunity, and thus, his claim should be permitted to proceed. Additionally, Tinnerman contends that his claims are not barred by res judicata, because the Tax Court did not have jurisdiction to consider the claims he

raises in this action and because his claims here do not arise out of the same nucleus of operative facts as the issues before the Tax Court.  Id. at 14-17.  Lastly, Tinnerman reasserts his allegations of error with respect to the deficiencies in the Notices of Lien.  Id. at 17-18.

### A.)   Whether The Court Has Subject Matter Jurisdiction Over Tinnerman's Procedural Challenges To His Tax Assessment

The parties in this litigation agree "that the United States, as sovereign, 'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'"  See United States v. Testan, 424 U.S. 392, 399 (1976) (internal citation omitted); Motion at 4; Response at 7.  Additionally, they agree that "[a]ny waiver of immunity must be strictly construed in favor of the sovereign, and it cannot be enlarged beyond what the statutory language allows."  City of Jacksonville v. Dep't of Navy, 348 F.3d 1307, 1314 (11th Cir. 2003) (internal citation omitted); Motion at 4; Response at 7.  Here 28 U.S.C. § 2410[4] creates a limited waiver of the sovereign immunity of the United States, which provides the Court with subject matter jurisdiction over certain claims.  The parties disagree, and thus the Court now decides whether the claims Tinnerman seeks to pursue fall within the scope of that waiver.

The Court begins its analysis with the Eleventh Circuit Court of Appeals decision in Stoecklin v. United States.  There, for the first time, the court addressed the question of "whether a taxpayer may rely on the waiver in § 2410 as a basis for jurisdiction to challenge

---

[4]The relevant portion of 28 U.S.C. § 2410 provides, "the United States may be named a party in any civil action or suit in any district court . . . to quiet title to . . . real or personal property on which the United States has or claims a mortgage or other lien." 28 U.S.C. § 2410(a)(1).

a federal tax lien." Stoecklin, 943 F.2d at 43.  After considering the circumstances in which other courts permitted such challenges, the Eleventh Circuit concluded "that a taxpayer may challenge the procedural validity of a federal tax lien under section 2410." Id. (citing McCarty v. United States, 929 F.2d 1085, 1087-88 (5th Cir. 1991); Robinson v. United States, 920 F.2d 1157, 1161 (3d Cir. 1990); Schmidt v. King, 913 F.2d 837, 839 (10th Cir. 1990); Elias v. Connett, 908 F.2d 521, 527 (9th Cir. 1990); Pollack v. United States, 819 F.2d 144, 145 (6th Cir. 1987)).  Nevertheless, the Court cautioned that a taxpayer cannot "challenge the merits of the underlying assessment." Stoecklin, 943 F.2d at 43.

In ruling on Defendant's First Motion to Dismiss, the Court read Stoecklin broadly to suggest that § 2410's waiver of sovereign immunity may permit procedural challenges to the assessment process as well as deficiencies in the process of procuring the lien.  Upon closer examination, the undersigned is of the view that this broad reading is not supported by either the Stoecklin decision or the authorities relied upon by the Eleventh Circuit in reaching that decision.

In Stoecklin, "[t]he IRS issued notices of deficiency for the years 1978-1983." Id. at 42.  After the deficiencies were upheld by the Tax Court and affirmed by the Eleventh Circuit Court of Appeals, taxes were assessed against Stoecklin, and the IRS filed notices of tax liens on his property.  See id. at 42-43.  The IRS then assessed notices of levy to attempt to collect Stoecklin's tax debt.  Id. at 43.  Stoecklin then filed suit to quiet title to property against which the government asserted the liens.  See id.  He argued that the liens were invalid because the government had not formally assessed the taxes due, had not issued a notice of assessment and demand for payment, and had not issued a final notice and

demand. Id.  The district court, agreeing with the position asserted by the United States in a motion to dismiss for lack of subject matter jurisdiction, dismissed the action, and Stoecklin appealed.  Id.

Upon review, the Eleventh Circuit, after considering decisions from other circuit courts of appeal, concluded that while a "taxpayer cannot challenge the merits of the underlying assessment[,]" a taxpayer "may challenge the procedural validity of a federal tax lien under § 2410."  Id.  Applying these concepts to Stoecklin's suit, the court found that because Stoecklin alleged "that the United States did not follow the proper procedures in procuring the liens" against his property, Stoecklin's lawsuit challenged the procedural validity of the federal tax liens, and thus fell "under the waiver of sovereign immunity outlined in § 2410."  Id.  Therefore, the court vacated the district court's dismissal of Stoecklin's complaint and remanded the case for further proceedings.  Id.[5]

While at first, the Stoecklin decision seemed to suggest that a taxpayer might be able to challenge procedural deficiencies in the tax assessment process, upon closer review, it is apparent that such was not the holding of the Eleventh Circuit.  Preliminarily, the Court notes that the challenges Stoecklin raised, and which the court permitted to proceed, were not challenges to the process of assessing the amount of taxes due.  Instead, he presented challenges to the manner in which the United States obtained the tax liens themselves.  The process for obtaining a federal tax lien is found in Title 26 of the United States Code. Pursuant to 26 U.S.C. § 6321, if a person liable for a tax refuses to pay that tax after

_____

[5]In Branca v. United States, 312 F. App'x 160 (11th Cir. 2008), the Eleventh Circuit again articulated its position that "under § 2410, Congress has waived the United States' immunity from suit only to the extent of a procedural challenge, but not to a suit concerning the underlying merits of a tax assessment."  Branca, 312 F. App'x at 161.

demand, the United States is granted a lien on all property and rights to property belonging to that person.  That lien arises at the time the assessment is made and continues until the full amount of the liability is satisfied or becomes otherwise unenforceable.  See 26 U.S.C. § 6322.  To perfect the lien, 26 U.S.C. § 6323 requires the United States to file a notice of federal tax lien, and § 6320 requires the IRS to send the taxpayer written notice of the lien and of the right to an administrative hearing.  See 26 U.S.C. § 6320.  Additionally, before the government can proceed to levy on property, it must serve final notice of intent to levy and advise the debtor of the various procedural rights available to challenge any such levy.  See 26 U.S.C. § 6330.

Stoecklin challenged whether the IRS had complied with these statutory requirements to procuring its lien by claiming the United States had not: 1) formally assessed the taxes; 2) issued a notice of assessment and demand for payment; and 3) provided a final notice and demand (notice of intent to levy).  See Stoecklin, 943 F.2d at 43.  These challenges did not seek to undermine the assessment of the tax liability itself nor contest its merits.  Instead, Stoecklin simply challenged the validity of the government's process of procuring the federal tax liens which the Court concluded fell under the waiver of sovereign immunity outlined in § 2410.  Thus, Stoecklin does not support a conclusion that § 2410's waiver of sovereign immunity extends to Tinnerman's challenge in this action that the lien on his property is invalid because the United States failed to follow proper procedures in determining the tax due.  Instead, such a challenge would constitute a challenge to the merits of the assessment which the Eleventh Circuit unequivocally stated was not within the United States' waiver of sovereign immunity.

While the Eleventh Circuit's own analysis was brief, a review of the authority the Eleventh Circuit considered in deciding Stoecklin further supports the conclusion that § 2410's wavier of sovereign immunity is limited to challenges to the procurement of the lien by the United States, not challenges to the process of assessing the tax due. See Stoecklin, 943 F.2d at 43 (citing McCarty, 929 F.2d at 1087-89; Robinson, 920 F.2d at 1161; Schmidt, 913 F2d at 839; Elias, 908 F.2d at 527; Pollack, 819 F.2d at 145). Indeed, a review of the factual circumstances and reasoning given by the courts with which the Stoecklin court expressed agreement is beneficial.

In McCarty, the taxpayer challenged the "government's seizure of funds and property in satisfaction of federal tax liabilities owed by him." McCarty, 929 F.2d at 1086. Pursuant to a warrant, the IRS searched McCarty's business and seized various items of his property. Id. Subsequently, the IRS levied on the property to collect McCarty's unpaid taxes. Id. After the seizure and levy, McCarty sued the government "seeking to 'Quiet Title and Return of Property.'" Id. McCarty "alleged that he had earned no taxable income, that he had not received a notice of deficiency, that he had not received a notice of assessment or demand for payment, that the statute of limitations for collecting the tax had run, and that the tax was not properly assessed from a procedural standpoint." Id. at 1087. McCarty further alleged that the government had waived its sovereign immunity under 28 U.S.C. § 2410, among other statutes. Id.

The government filed a motion to dismiss McCarty's complaint in which it argued that the district court lacked subject matter jurisdiction "because the United States had not waived

-13-

its sovereign immunity." Id.   McCarty then filed a motion for summary judgment.   Id.   In

response, the government submitted:

> a postal form showing that it sent a notice of deficiency by
> certified mail; "Certificates of Assessment" showing that the tax
> was assessed, notice of assessment was given, and the
> assessments remained unpaid; a copy of a final notice of intent
> to levy with a copy of the receipt indicating McCarty received
> the notice; and a notice of levy.

Id.   Upon review of the motions, the district court "dismissed for lack of subject matter

jurisdiction McCarty's challenges of the validity of the tax assessments against him." Id.

However, the court found that it had jurisdiction over the remaining claims, and that the

"evidence submitted by the government established that the IRS had satisfied the procedural

prerequisites to levy on the property." Id.   McCarty appealed the district court's findings

arguing that the "United States waived its sovereign immunity and that the court thus had

subject matter jurisdiction over all issues," including the existence of a valid assessment.

Id.

After recognizing the issue of "whether a taxpayer may rely on the waiver in § 2410

as a basis for jurisdiction to challenge a federal tax lien" to be one of first impression in the

circuit, the Fifth Circuit Court of Appeals reviewed caselaw from other jurisdictions observing:

> Other jurisdictions that have addressed the issue permit a
> taxpayer to challenge the procedural validity of a federal tax
> lien under § 2410. A taxpayer may not, however, challenge the
> merits of the underlying assessment.   The merits of the
> assessment refers to the liability for the amount, if any, of tax
> due.  The taxpayer cannot contest the existence or validity of
> the tax assessment in an action under § 2410.

Id. at 1087-88 (internal citations and quotations omitted).   In accordance with this authority,

the court concluded that the "district court correctly held that it did not have jurisdiction over

McCarty's claims that he did not earn any taxable income, that the IRS did not file a valid assessment, and that the statute of limitations had run on his liability of the taxes." Id. at 1088.   The court also determined that the district court "correctly held that it did have jurisdiction over the claims that the government failed to follow the correct procedures for filing a lien." Id.  Nevertheless, the court ultimately concluded that the district court was correct in granting summary judgment to the United States on McCarty's claims challenging the procedural validity of the government's levy on his property.  Id.

In Schmidt, the Tenth Circuit also confronted the issue of "whether the district court had jurisdiction to consider [an] action, which plaintiffs . . . characterize as an action to quiet title under 28 U.S.C. § 2410." Schmidt, 913 F.2d at 838.  After the Schmidts failed to file tax returns for several years, the IRS assessed tax deficiencies for those years.  Id.  "When the Schmidts ignored the deficiencies, the [IRS] filed liens and issued a notice of levy on eleven parcels of their property."  Id.  Although the IRS seized and sold four of the parcels, the tax liability remained unsatisfied, prompting the IRS to file additional tax liens. Id. Subsequently, the Schmidts sued the United States and various IRS employees alleging:

> (1) the I.R.S. made an unlawful deficiency assessment and failed to follow proper procedure in making the assessment, (2) they are not subject to income taxes, (3) they were improperly labeled as taxpayers, and (4) the I.R.S. did not issue a notice of assessment and demand for repayment prior to levying on and selling their property.

Id.  The defendants filed a motion for summary judgment arguing "that the district court lacked jurisdiction under section 2410 to hear" the action.  Id.  The district court determined "that it had jurisdiction only over the claims that challenged the tax lien, levy, and sale because those claims sought to quiet title under the section 2410 waiver of sovereign

immunity," but nevertheless concluded "that the Schmidts did receive the proper notice and demand requisite to a valid tax lien." Id. at 839.  The Schmidts appealed.

On appeal, the Tenth Circuit refused to address the Schmidts' arguments relating to the merits of the underlying tax assessment because it "conclude[d] the district court lacked jurisdiction to consider this action." Id.  In its analysis, the court observed that, "Federal courts considering the issue of waiver of sovereign immunity under section 2410(a) have unanimously concluded that it may not be construed as permitting a collateral attack on the merits of a tax assessment." Id. (citations omitted).  Further, the court noted that, "[w]hen the taxpayer challenges the procedural regularity of the tax lien and the procedures used to enforce the lien, and not the validity of the tax assessment, sovereign immunity is waived and the district court does have jurisdiction over a quiet title action." Id.  Upon review of the facts before it, the court found that

> The [Schmidts] . . . [did] not challenge the procedures used to enforce the tax lien.  Rather, they attack the procedures of the assessment and notice and demand and, ultimately, the adjudication of whether they owe taxes. Section 2410 does not extend to challenges for procedural irregularities in assessment or collection of taxes.  Thus, the [Schmidts] were required to pay their taxes first before filing an action in district court.

Id. Accordingly, the court vacated the judgment of the district court and remanded the matter for "dismissal for lack of jurisdiction." Id.

In Pollack, the Sixth Circuit Court of Appeals reached a similar conclusion. Pollack, 819 F.2d at 145.  In that suit, taxpayers sought to quiet title to real property alleging "that the IRS had miscalculated the statutory interest due them from their . . . overpayment of taxes" in a particular year. Id.  Plaintiffs requested a judgment determining that, upon payment of

a sum certain, the government would be fully satisfied as to the deficiency for a previous tax year, and that the taxpayers would hold title to their property free and clear of any lien in the government's favor.  Id.  The district court entered summary judgment for the government, and the taxpayers appealed.

On appeal, the court did not address the merits of the taxpayers' claim because it found that the "District Court was without jurisdiction in this matter."  Id.  Although the court recognized the limited waiver of sovereign immunity provided by 28 U.S.C. § 2410, the court explained that, "[a] suit under [§ 2410] is proper only to contest the procedural regularity of a lien; it may not be used to challenge the underlying tax liability."  Id.  The court found that despite the taxpayers' efforts to categorize their suit as a quiet title action– thereby falling within § 2410's limited waiver– "it is clear . . . that they were actually seeking to challenge the amount of their 1975 tax liability."  Id. at 145-46.  Because the taxpayers did not "contest the procedural regularity of the lien[,]" the court concluded that the district court was without jurisdiction to consider the taxpayers' complaint.  Id. at 146.  Accordingly, the court remanded the case with instructions that it be dismissed.  Id.

Another decision relied upon by the Eleventh Circuit in Stoecklin was the 1990 decision of the Ninth Circuit in Elias.  See Stoecklin, 943 F.2d at 43.  In Elias, a taxpayer initiated litigation against the United States pursuant to 28 U.S.C. § 2410.  Elias, 908 F.2d at 523.  The district court found that "because Elias failed to state a cause of action under 28 U.S.C. § 2410, the United States had not waived its sovereign immunity to suit."  Id.  On appeal, Elias contended "that the United States waived its sovereign immunity to suit . . . because his action is one to quiet title under [§ 2410(a)] and challenges only the procedural

validity of the IRS's lien." Id. at 527.  In support of his contention, Elias argued that: "(1) his

tax deficiency is null and void; (2) a lawful assessment against him does not exist; (3) he is

not liable for any . . . penalties; and (4) his assessment is invalid because he was not issued

a notice of deficiency for 1981 and 1982." Id.  While the court recognized that the United

States may be joined as a party in a quiet title action, the court stated that, a "taxpayer may

not use a section 2410 action to collaterally attack the merits of an assessment.  Rather, the

taxpayer may only contest the procedural validity of a tax lien." Id.  Upon review, the court

determined that Elias' "allegations address the merits of Elias' assessment rather than the

procedural validity of the IRS's lien.  Therefore, they do not support Elias's claim that he has

stated a quiet title cause of action under section 2410(a)." Id.  As such, the court held that

the district court properly dismissed Elias' suit because the United States did not waive its

sovereign immunity. Id. at 528.

 The only decision relied upon by the Eleventh Circuit in Stoecklin to take a broader

view of a permissible § 2410 challenge is the decision of the Third Circuit in Robinson.

However, a review of that decision discloses that its reasoning is wholly inapplicable to

Tinnerman's claims.  See Robinson, 920 F.2d at 1159-61.  In Robinson, plaintiffs brought

an action under § 2410(a) to quiet title alleging "that the government failed to comply with

the statutory procedures for creating a lien, specifically that the IRS never issued a notice

of deficiency to plaintiffs before assessing the tax due." Id. at 1157-58.  In its motion to

dismiss, the government conceded that a notice of deficiency was not sent, but nonetheless

argued "that jurisdiction was lacking because sovereign immunity barred plaintiffs from

attacking the merits of the assessment under section 2410(a)." Id. at 1158.  Finding that the

plaintiffs' "suit was essentially a challenge to the assessments[,]" the district court dismissed the complaint for lack of subject matter jurisdiction, and the plaintiffs appealed. See id.

The Third Circuit began its analysis by identifying the steps taken by the IRS when it "believes that the taxpayers have not paid all or any part of their income tax due[.]" See id. The first step in the process occurs when the "IRS mails a notice of deficiency to the taxpayers by certified or registered mail. Once this notice has been mailed, the taxpayers have ninety days in which to file a petition for redetermination in the Tax Court." Id. The notice of deficiency is the "taxpayers' ticket to the Tax Court to litigate the merits of the deficiency determination and is a jurisdictional prerequisite to a suit in that forum." Id. (internal quotation and citation omitted). The court further recognized the notice of deficiency to be "a prerequisite to a valid assessment by the IRS." Id.

In discussing whether it could exercise jurisdiction over the plaintiffs' claims, the court recognized the well-settled "principle that a taxpayer cannot use section 2410(a) to challenge the extent of, or existence of, substantive tax liability." Id. (citing Yannicelli v. Nash, 354 F. Supp. 143, 151 (D. N.J. 1972) (recognizing that in a § 2410 action plaintiffs must refrain from collaterally attacking the merits of the government's tax assessment and defining the "merits" as "any issue touching upon the actual extent of the taxpayer's federal tax liability")). Consistent with this principle, the IRS contended that plaintiffs' claims "inevitably undermine[d] the procedures required to establish a valid assessment and, therefore, [their] challenge to the procedural integrity of the lien [was] in reality an attack on the substantive tax assessment." Id. at 1160. However, the plaintiffs maintained "that a challenge to the

procedural irregularity of the tax lien create[d] jurisdiction, particularly because they concede[d] the amount owed." Id. at 1160-61.

Critical to the court's analysis and ultimate decision was "the fact that the IRS's failure to send a notice of deficiency denied plaintiffs an opportunity to litigate the merits of the alleged deficiency in the Tax Court." Id. at 1161.  The court observed, "[h]ad the notice of deficiency been sent, plaintiffs would have had the right to file a petition in Tax Court and . . . no assessment could have been made before a decision by that Court." Id.  Thus, although the court apparently recognized that plaintiffs were attempting to open "the procedural deficiencies of the assessment to question," the court found that, under the specific circumstances before it, the plaintiffs' efforts did no "violence to the collection system created in the Internal Revenue Code." Id.  Therefore, the court held that

> in an income tax dispute cognizable in the Tax Court, jurisdiction under section 2410(a) is proper when the procedural error blocking access to the Tax Court may also impugn the procedural validity of the assessment.  Consistent with the weight of authority we neither permit attacks on the amount of the assessment nor entertain assertions that no tax is owed.

Id.  On this basis, the court reversed the order of the district court, and remanded the matter for further proceedings. Id. at 1162.  Because Tinnerman concedes in his Amended Complaint that the IRS sent him Notices of Deficiencies for the relevant tax years and that the he timely petitioned the Tax Court for review, the Robinson decision has little applicability to the issues at hand.

As previously noted, the Eleventh Circuit's discussion of the types of challenges that may be brought pursuant to the waiver of sovereign immunity contained in § 2410 was brief. However, the above review of those decisions with which the court expressed agreement,

along with the Eleventh Circuit's admonition that a taxpayer not "challenge the merits of the underlying assessment," and its recognition that Stoecklin's claim could proceed <u>because</u> he contended that the United States "did not follow the proper procedures in establishing the liens against his property," compels the conclusion that the waiver of sovereign immunity set forth in § 2410 is limited to challenges to the procedure of procuring a federal tax lien, not the process of determining any amount due.   <u>See, e.g.,</u> <u>McCarty</u>, 929 F.2d at 1088 (finding that district court did not have jurisdiction over McCarty's claims that he did not earn any taxable income and that the IRS did not file a valid assessment but could exercise jurisdiction over claims that the government failed to follow the correct procedures for filing a lien); <u>Schmidt</u>, 913 F.2d at 839 (concluding that section 2410 does not extend to challenges for procedural irregularities in assessment or collection of taxes); <u>Pollack</u>, 819 F.2d at 145-46 (finding district court lacked jurisdiction because taxpayers were not contesting the procedural regularity of the lien but, instead, were seeking to contest tax liability); <u>Elias</u>, 908 F.2d at 527 (prohibiting taxpayer from use of section 2410 action to collaterally attack the merits of an assessment).[6]

With these principles guiding its analysis, the Court considers the challenges raised by Tinnerman in this action.  In the Amended Complaint, Tinnerman contends that the "Lien is invalid and ineffective because Defendant's process of assessing the taxes, the alleged failure of which to pay Defendant contends gave rise to the Lien, was invalid and ineffective."

---

[6]While the plaintiffs in <u>Robinson</u> were allowed to challenge the absence of a notice of deficiency in the assessment process, the court reasoned that otherwise the plaintiffs would have been stripped of any opportunity to contest the assessment in any forum. <u>See</u> <u>Robinson</u>, 920 F.2d at 1161 ("Opening the procedural deficiencies of the assessment to question under section 2410(a) <u>in these circumstances</u>, therefore, does not do violence to the collection system created in the Internal Revenue Code.") (emphasis added).

Amended Complaint at 5.  Relying on the Court's suggestion that a procedural challenge to the assessment process may be valid, Tinnerman proceeds to present several reasons why, in his opinion, various aspects of the assessment process were improper.  See id. at 6-12. For the reasons discussed below, the Court finds that each of Tinnerman's arguments impermissibly challenges the tax assessment process or Tinnerman's underlying tax liability, and therefore falls outside of the waiver of sovereign immunity provided in 28 U.S.C. § 2410.

Initially, Tinnerman contends that the IRS agents who prepared the SFRs for the tax periods at issue did not possess the binding regulatory authority necessary to generate and issue valid SFRs.  See Amended Complaint at 6-7.  These arguments regarding the qualifications of IRS agents responsible for generating SFRs or the content of the SFRs have no bearing on the procedural validity of the lien; instead, they challenge the process of assessing the tax due.  See McCarty, 929 F.2d at 1087-88 ("The taxpayer cannot contest the existence or validity of the tax assessment in an action under § 2410."); Schmidt, 913 F.2d at 839 (rejecting taxpayer challenge to the "procedures of assessment and notice and demand and, ultimately, the adjudication of whether they owe taxes.").

With regard to Tinnerman's assertions that the dates on various I.R.C. § 6020(b) Certifications somehow invalidate the SFRs and certain penalties included therein, see Amended Complaint at 7, the Court finds that those assertions challenge both the merits and the amount of the underlying tax assessments.  Indeed, Tinnerman seems to argue that because the date on the IRS certifications is earlier than the date of the Prepared Delinquent Returns that accompany them, the calculated penalties are invalid.  Id.  However, this argument impermissibly strikes at the merits underlying the assessments because the

challenge posed to the certification of the SFRs and Prepared Delinquent Returns is really a challenge to whether the tax liabilities and penalties certified on the date of the forms accurately reflect the tax liabilities and penalties due on that date.  Accordingly, this argument directly and impermissibly challenges Tinnerman's tax liability. See Stoecklin, 943 F.2d at 43; Pollack, 819 F.2d at 145 (stating that a suit under 28 U.S.C. § 2410 may not be used to challenge underlying tax liability).

Tinnerman next attempts to challenge the validity of the tax lien by noting that "the Certificate of Official Record identified as Literal Transcript of Account . . . with respect to the amount for each of the Tax Periods Ending shown on the Notice of Lien . . . includes a debit for 'Form 1040A' that is coded '160.'" Amended Complaint at 7.  Tinnerman contends that this line item is invalid because, "according to Defendant's own processes and procedures, [code] '160' is intended to refer exclusively to transcripts involving Business Master Files . . . or Individual Retirement Account Files.  The Plaintiff's Transcript, however, involves an Individual Master File record . . . " Id.  Tinnerman's argument regarding the inclusion of a line item debit coded 160 on Form 1040A implicates tax calculation methods or procedures in the tax assessment process.  As such, those allegations are inappropriate in a § 2410 action. See Schmidt, 913 F.2d at 839; Yannicelli, 354 F. Supp. at 157 n.4 ("the merits which the district court may not review . . . include any issue touching upon the actual extent of the taxpayer's federal tax liability.").

In an attempt to fall within the narrow holding of the Robinson Court, Tinnerman contends that the above alleged infirmities invalidated the SFRs for each of the tax periods shown on the Notice, and as a result his Notices of Deficiency for those tax periods, i.e. his

-23-

"tickets to the Tax Court," were never validly issued.  Thus, despite the fact that Tinnerman "timely filed a petition in the United States Tax Court in response to the IRS's issuance of each of its statutory Notices of Deficiency," and fully litigated his claims, he asserts that those petitions, their litigation, and the Tax Court's findings are invalid because the Tax Court never really had jurisdiction over his petitions.  See Amended Complaint at 8.  Continuing this progressive argument, Tinnerman asserts that because the Tax Court proceedings were invalid, Defendant could not have legally assessed the tax liability that eventually lead to the filing of the lien.

Tinnerman's chain-link argument fails for two reasons.  First, the Court observes that unlike the plaintiffs in Robinson, Tinnerman does not assert the existence of a tax dispute cognizable in Tax Court based upon a procedural error that denied him access to the Tax Court.  Rather, it appears that, unhappy with his results in the Tax Court, Tinnerman is now attempting to obtain a second bite at the apple.  Second, as discussed supra, the Court finds Tinnerman's allegations of procedural invalidity to be impermissible challenges to the assessment process, not the lien procurement process, and are therefore inappropriate in a § 2410 action.  Moreover, while Tinnerman claims that "neither the existence nor the extent of any tax liability" he may owe Defendant is at issue, he unabashedly advances arguments focused entirely on minimizing or eliminating his tax liability for the tax periods in question.  These are challenges to the "amount, if any, of the tax due."  McCarty, 929 F.2d at 1087.  The Tax Court, not this Court, is the appropriate forum for such arguments.  Indeed, a "taxpayer cannot contest the existence or the tax assessment in an action under § 2410."  Id.; See also Stoecklin, 943 F.2d at 43 ("A taxpayer cannot, however, challenge the merits

of the underlying assessments."). Each of the above described challenges raised by Tinnerman is a challenge to the IRS assessment of taxes due from Tinnerman. Accordingly, this Court concludes that it does not possess subject matter jurisdiction over Tinnerman's challenges to the merits or validity of his tax assessments. Thus, Tinnerman's claims regarding the irregularities in the assessment process are due to be dismissed.[7]

**B.)   Whether Tinnerman's Procedural Challenges To The Procurement Of The Federal Tax Liens State A Claim**

Although the majority of Tinnerman's allegations impermissibly challenge the assessment process or the merits of his underlying tax liability, and are therefore outside of the jurisdiction of the Court, Tinnerman does present some permissible challenges to the procedural validity of the federal tax lien under § 2410. Stoecklin, 943 F.2d at 43. Tinnerman mounts a procedural challenge to the lien based on the assertion that the Notice of Lien fails to sufficiently identify the tax liability giving rise to the lien, as required by Treasury Regulation section 301.6323(f)-1(d)(2). See Amended Complaint at 9-11. This Treasury Regulation provides, in pertinent part, "A Form 668 must identify the taxpayer, the tax liability giving rise to the lien, and the date the assessment arose regardless of the method used to file the notice of Federal tax lien." 26 C.F.R. § 301.6323(f)-1(d)(2) (2009). The Notice states that it is a "Form 668 (Y)(c)." See Notice (Doc. No. 26-1 at 1). It identifies the taxpayer, stating "Name of Taxpayer WILLIAM R TINNERMAN." See id. Additionally, the Notice indicates the tax liabilities giving rise to the lien, as the numbers "1040," "6673," and "6702" listed in column (a), labeled "Kind of Tax." See id. Finally, the Notice identifies the dates the

---

[7]In light of the Court's conclusion on the question of subject matter jurisdiction, analysis of Defendant's argument regarding res judicata would be inappropriate.

assessments arose in column (d), titled "Date of Assessment." <u>See</u> <u>id.</u>  Although Tinnerman

specifically alleges a deficiency in the identification of the tax liability giving rise to the lien,

<u>see</u> Amended Complaint at 10-11, the Court notes that other courts considering challenges

to a notice of lien based on the contention that they fail to satisfy Treasury Regulations have

determined that an identification of tax liability in the manner accomplished in the instant

Notice is sufficient.  <u>See</u> <u>Brandon v. Comm'r of Internal Revenue</u>, 133 T.C. 83, 86-87 (U.S.

Tax Ct. 2009) (finding a Form 668 Notice of Federal Tax Lien valid where the form identified

that section 6672 trust penalties gave rise to the lien); <u>Pursell v. United States</u>, Civ. No. S-

94-0463-WBS-PAN, 1995 WL 273175, at *6, n.10 (E.D. Cal. Feb. 27, 1995) (where notices

described the "kind of tax" as "1040," it was "inconceivable that plaintiff . . . was not aware

that the levy notices pertained to his <u>income tax</u> liability" (emphasis in original)); <u>see</u> <u>also</u>

<u>Matter of Sills</u>, 82 F.3d 111, 113 (5th Cir. 1996) (upholding validity of a notice of federal tax

lien that incorrectly identified the tax year of the liability giving rise to the lien where the

notice was filed in the proper place and correctly identified the taxpayer, the property and its

location, the amount owed, and the date of the assessment); <u>Cennamo v. United States</u>, 147

B.R. 540, 543 (C.D. Cal. 1992) (despite erroneous assessment date, the Notice of Federal

Tax Lien provided constructive notice of § 6700 and § 6701 federal tax liability).  After

bringing the above line of authority to Tinnerman's attention in the Order and providing him

an opportunity to file the Amended Complaint in order to better articulate the precise nature

of any alleged procedural deficiency, Tinnerman has failed to identify a relevant failure.  The

Court is of the opinion that the Notice is sufficient to satisfy the requirements of Treasury

Regulation section 301.6323(f)-1(d)(2).  Indeed, while minor defects in a Notice will be

overlooked given that the purpose of such Notice is simply to give constructive notice, see Cennamo, 147 B.R. at 543, Tinnerman has failed to actually identify a defect. Accordingly, with regard to this procedural challenge, Tinnerman has failed to state a claim upon which relief may be granted.

Next, Tinnerman claims that the Notice is procedurally invalid because it was not filed in accordance with Treasury Regulation section 301.6323(f)-1(a)(1)(ii). Amended Complaint at 11-12. Specifically, Tinnerman contends that "Defendant did not file the Notice of Lien in the one (1) office within the State of Florida that is designated by Florida law for federal tax liens that encumber this type of property." Id. at 12. Treasury Regulation § 301.6323(f)-1(a)(1)(ii) states that in cases of intangible personal property, such as the Shares, the notice of lien shall be filed in one office "within the State (or the county or other governmental subdivision), as designated by the laws of the State, in which the property subject to the lien is deemed situated under the provisions of paragraph (b)(2) of this section." 26 C.F.R. § 301.6323(f)-1(a)(1)(ii) (2010). Treasury Regulation section 301.6323(f)-1(b)(2) (2010) further provides that, "For purposes of paragraph (a) of this section, property is deemed situated as follows: **(2) Personal property**. Personal property, whether tangible or intangible, is deemed situated at the residence of the taxpayer at the time the notice of lien is filed." Accordingly, as correctly noted by Defendant, "the situs of the shares of Tinnerman's stock is his residence, and the proper location for filing a lien to attach to those shares is in the office within the State of Florida designated by the laws of the State of Florida where such property is deemed situated." Motion at 14. The relevant Florida Statutes provide that the office in the taxpayer's county of residence where such federal tax lien notices must be filed

is the Clerk of the Circuit Court.  <u>See</u> Fla. Stat. §§ 28.222(3)(e), 713.901(3)(c)(4); Motion at 15.[8]

Tinnerman has, throughout this litigation, contended that he is a resident of St. Johns County, Florida with a residence in St. Augustine, Florida 32086.  Complaint at 1; Amended Complaint at 1.  Tinnerman has also claimed to be the sole, fee simple owner of the Shares, subject to one encumbrance.  Amended Complaint at 2, 4.  Additionally, Tinnerman concedes that the situs of the Shares is deemed to be the residence of the owner of the Shares.  <u>Id.</u> at 2.  Accordingly, based on the allegations of the Amended Complaint, the situs of the Shares is in St. Johns County.  Further, Tinnerman recognizes that "Defendant, on November 6, 2007, filed the Notice of Lien with the St. Johns County Clerk of Courts for recording.  The Clerk assigned the Notice of Lien document number 2007073896 and recorded the Notice of Lien in O.R. 3003, page 1575, of the Public Records of St. Johns County, Florida."[9]  <u>Id.</u> at 5.  Inasmuch as Tinnerman's allegations establish that Defendant correctly filed the Notice in accordance with the relevant Treasury Regulations and Florida Statutes, the Court determines that Tinnerman's claims of lien invalidity based on failure to file the Notice in an appropriate Florida office fails to state a claim upon which relief may be granted.  Accordingly, although the Court can exercise jurisdiction over such a procedural

---

[8] Florida Statutes section 28.222(3)(e) states, "The clerk of the circuit court shall record the following kinds of instruments presented to him or her for recording, upon payment of the service charges prescribed by law: . . . (e) Notices of liens for taxes payable to the United States and other liens in favor of the United States, and certificates discharging, partially discharging, or releasing the liens, in accordance with the laws of the United States."  Florida Statutes section § 713.901(3)(c)(4)provides, "Notices of federal liens upon personal property, whether tangible or intangible, for obligations payable to the United States, and certificates and notices affecting the liens, shall be filed as follows: . . . (4) In all other cases, in the office of the clerk of the circuit court of the county where the person against whose interest the lien applies resides at the time of filing of the notice of lien."

[9] The Notice (Doc. No. 26-1 at 1) also reveals the recording information.

challenge to the federal lien, it finds that Tinnerman has failed to state a claim upon which relief can be granted.

## IV. Conclusion

In consideration of the foregoing, the Court concludes that § 2410's waiver of sovereign immunity does not extend to Tinnerman's challenges to the alleged deficiencies in the assessment of his tax liabilities.  Thus, those claims must be dismissed.  While Tinnerman has also raised procedural challenges to the procurement of federal tax liens, his challenges fail to state a claim upon which relief can be granted.  Thus, those claims, too, must be dismissed.  Accordingly, it is hereby **ORDERED:**

1.      Defendant's Motion to Dismiss (Doc. No. 30) is **GRANTED**.

2.      The Amended Complaint (Doc. No. 25) is **DISMISSED**.

3.      The Clerk of the Court is directed to terminate any remaining deadlines and pending motions as moot and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 31st day of March, 2011.

MARCIA MORALES HOWARD
United States District Judge

lc14

Copies to:
Counsel of Record